CAROLE BURNHAM *v.* KARL AND GELB, P.C., ET AL.
(AC 17022)

Foti, Lavery and Hennessy, Js.

Argued March 27—officially released September 15, 1998

*James S. Brewer,* for the appellant (plaintiff).

*Richard P. Weinstein,* with whom, on the brief, was *Nathan A. Schatz,* for the appellees (defendants).

FOTI, J. The plaintiff appeals from the judgment of the trial court rendered following the granting of the defendants' motion for summary judgment. On appeal, the plaintiff claims that the trial court improperly granted summary judgment in favor of the defendants as to her claims (1) of breach of contract, (2) of negligent misrepresentation and (3) of wrongful discharge. We affirm the judgment of the trial court.

The following facts are undisputed. The named defendant, Karl and Gelb, P.C., is a dental practice located in West Hartford that employs two periodontists, the defendants Edward Karl and David Gelb. On July 6, 1993, the plaintiff, Carole Burnham, was hired by the defendants as an office manager. On November 5, 1993, the plaintiff filed an anonymous complaint with the Connecticut State Dental Association (dental association) alleging that the defendants engaged in unsanitary and unhealthy practices in violation of the federal Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq. On November 22, 1993, the plaintiff was terminated by the defendants and thereafter filed a complaint with the Hartford office of the Occupational Safety and Health Administration, alleging that she was terminated by the defendants in retaliation for her complaint to the dental association. The plaintiff's complaint was administratively closed in February, 1994, due to the plaintiff's "lack of response" to correspondence from the Hartford office of the Occupational Safety and Health Administration.

On January 24, 1995, the plaintiff filed a three count amended complaint alleging breach of contract, negligent misrepresentation and wrongful termination. On September 23, 1996, the defendants moved for summary judgment. On March 7, 1997, the trial court granted the

defendants' motion for summary judgment as to each count of the plaintiff's amended complaint.

"The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' See *Barrett* v. *Danbury Hospital*, 232 Conn. 242, 250, 654 A.2d 748 (1995). 'Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue.' *Haesche* v. *Kissner*, 229 Conn. 213, 217, 640 A.2d 89 (1994). 'It is not enough, however, for the opposing party merely to assert the existence of . . . a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment].' . . . *Water & Way Properties* v. *Colt's Mfg. Co.*, 230 Conn. 660, 665, 646 A.2d 143 (1994)." *Branford* v. *Monaco*, 48 Conn. App. 216, 221–22, 709 A.2d 582, cert. denied, 245 Conn. 903, 719 A.2d 900 (1998). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Beebe* v. *East Haddam*, 48 Conn. App. 60, 64, 708 A.2d 231 (1998).

I

The plaintiff first claims that the trial court improperly granted summary judgment in favor of the defendants as to her claim of breach of contract. The plaintiff

asserts that an implied employment contract existed between the parties as a result of representations made to her by the defendants. The plaintiff alleges that at the time she was hired, the defendants agreed to evaluate her performance based on certain "performance expectations and goals." The plaintiff also alleges that the defendants agreed that she would be terminated only for cause. We disagree.

"[T]o prevail on [her] claim, the plaintiff must demonstrate an actual agreement by the defendant[s] to have an employment contract with [her]. 'A contract implied in fact, like an express contract, depends on actual agreement. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, 202 Conn. 206, 211 n.2, 520 A.2d 217 (1987); *Therrien* v. *Safeguard Mfg. Co.*, 180 Conn. 91, 94, 429 A.2d 808 (1980); *Brighenti* v. *New Britain Shirt Corporation*, 167 Conn. 403, 406, 356 A.2d 181 (1974); *Corriveau* v. *Jenkins Bros.*, 144 Conn. 383, 387, 132 A.2d 67 (1957).' . . . *Coelho* v. *Posi-Seal International, Inc.*, 208 Conn. 106, 111–12, 544 A.2d 170 (1988). Accordingly, to prevail on [her breach of contract] claim, 'which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that the [defendants] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [her] under which [she] could not be terminated without just cause . . . . *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, [211–12] n.2; *Therrien* v. *Safeguard Mfg. Co.*, supra, 94–95.' . . . *Coelho* v. *Posi-Seal International, Inc.*, supra, 112. To survive a motion for summary judgment, the plaintiff had the burden of presenting evidence that the defendant[s] had agreed to some form of contract commitment." *Reynolds* v. *Chrysler First Commercial Corp.*, 40 Conn. App. 725, 729–30, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996).

"A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties. See *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.*, 159 Conn. 242, 246, 268 A.2d 391 (1970); *Lucier* v. *Norfolk*, 99 Conn. 686, 699, 122 A. 711 (1923)." *Christensen* v. *Bic Corp.*, 18 Conn. App. 451, 458, 558 A.2d 273 (1989). In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a "present intention on the part of the defendants to undertake immediate contractual obligations to the plaintiff." *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 202 Conn. 214–15.

In the present case, the plaintiff has provided no evidence that would permit a trier of fact to draw a reasonable inference that an implied employment contract existed between the parties. The trial court concluded that at most, the facts establish that the plaintiff completed a three month "probationary period" and that "[t]here are no facts in the record . . . from which it can be concluded that in completing this brief probationary period, [the] plaintiff's status changed from that of an at-will employee." This conclusion is supported by the plaintiff's own deposition testimony. In her deposition, the plaintiff testified that she was not given a guarantee as to how long she would be employed. The plaintiff also testified that she was never told that, after the completion of the probationary period she could be fired only if she did something wrong. Moreover, the plaintiff's claim that the defendants agreed to evaluate her performance based on certain "performance expectations and goals" is contradicted by her own deposition testimony. The plaintiff testified that no performance expectations or goals were ever set for her and that she was unaware of any standard by which the defendants were judging her performance. Given these admissions by the plaintiff, we conclude that there

was no meeting of the minds between the plaintiff and the defendants regarding the existence of an employment contract.

Since the plaintiff has failed to present the necessary factual predicate to raise a genuine issue as to the existence of an implied employment contract, we conclude that the trial court properly granted the defendants' motion for summary judgment as to the plaintiff's claim of breach of contract.

## II

The plaintiff next claims that the trial court improperly granted summary judgment in favor of the defendants as to her claim of negligent misrepresentation. The plaintiff asserts that the defendants negligently misrepresented that the plaintiff's job performance would be evaluated on the basis of her progress toward the achievement of "performance expectations and goals" established at the beginning of her employment. The plaintiff also asserts that the defendants negligently misrepresented that she would be terminated only for cause. We disagree.

"[Our Supreme Court] has long recognized liability for negligent misrepresentation. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School*, supra, 202 Conn. 217. The governing principles are set forth in . . . § 552 [(1)] of the Restatement Second of Torts (1977): One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. Id., 217–18. [T]he plaintiff need not prove that the representations made by the defendant[s] were promissory. It is sufficient . . . that the representations contained false

information. Id., 218." (Internal quotation marks omitted.) *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 20, 647 A.2d 1031 (1994), remanded for further consideration, 235 Conn. 901, 664 A.2d 1124 (1995).

The facts on which the plaintiff relies to support her claim of negligent misrepresentation are the same as those relied on to support her claim of breach of an implied employment contract.[1] In part I of this opinion, we relied on the plaintiff's deposition testimony to conclude that the plaintiff failed to present any evidence disclosing the existence of an implied employment contract. In her deposition, the plaintiff testified that (1) she was not given a guarantee as to how long she would be employed, and (2) the defendants never set any performance expectations or goals for her. The plaintiff concedes, therefore, that the allegedly false information, on which she bases her negligent misrepresentation claim, was never communicated to her by the defendants.

Since the plaintiff has provided no evidence from which a trier of fact reasonably could infer that the defendants made representations to the plaintiff that were untrue, we conclude that the trial court properly granted the defendants' motion for summary judgment as to the plaintiff's claim of negligent misrepresentation.

### III

The plaintiff's final claim is that the trial court improperly granted summary judgment in favor of the defendants as to her claim of wrongful discharge. The plaintiff alleges that she was terminated for reporting the unsanitary and unhealthy practices of her employers and,

---

[1] During oral argument on the defendants' motion for summary judgment, the plaintiff's attorney conceded that the same factual issues are involved in both the plaintiff's claims of breach of an implied contract and negligent misrepresentation. The plaintiff's attorney stated, "The next count, I agree with [the defendants' attorney], essentially kind of bootstraps from the first one as far as the factual issues. It's the same factual issues."

therefore, that she was terminated in violation of public policy. Specifically, the plaintiff claims that she was terminated by the defendants for reporting their alleged OSHA violations to the dental association. In granting the defendants' motion for summary judgment, the trial court stated that "[i]n the absence of any clear appellate Connecticut authority to the contrary, and in light of similar holdings in other jurisdictions, I conclude that [the] plaintiff's attempted use of OSHA violations to support a cause of action for wrongful termination fails as a matter of law because the plaintiff had a statutory administrative remedy available with [the Occupational Safety and Health Administration]. Accordingly, the violation does not fall under the public policy exception to the terminable at will doctrine." We agree with the trial court.

"In *Sheets* v. *Teddy's Frosted Foods, Inc.*, [179 Conn. 471, 480, 427 A.2d 385 (1980)], in an effort to balance the competing interests of employers and employees, [the Supreme Court] recognized a public policy limitation on the traditional employment at-will doctrine. *Antinerella* v. *Rioux*, 229 Conn. 479, 492, 642 A.2d 699 (1994). In *Sheets,* [the court] sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, [475]; see *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986); *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984). In *Morris* v. *Hartford Courant Co.*, supra, 680, [the court] recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [an appellate court must] look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged

that his dismissal contravened any judicially conceived notion of public policy. . . . *Antinerella* v. *Rioux*, supra, 492, quoting *Morris* v. *Hartford Courant Co.*, supra, 680. . . . *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580–81, 693 A.2d 293 (1997)." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 76–77, 700 A.2d 655 (1997). "[W]e note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one . . . . We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." (Citation omitted; internal quotation marks omitted.) Id., 79.

In the present case, the plaintiff relies on the public policy prohibiting employers from terminating employees in retaliation for reporting violations of state or federal laws, as embodied in 29 U.S.C. § 660 (c)[2] and General Statutes § 31-51m,[3] to support her claim of

---

[2] Title 29 of the United States Code, § 660 (c), provides in relevant part: "(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

"(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay. . . ."

[3] General Statutes § 31-51m provides in relevant part: "(b) No employer shall discharge, discipline or otherwise penalize any employee because the

wrongful discharge.[4] Although the plaintiff relies on § 31-51m to support her cause of action for public policy wrongful discharge, she has not brought a separate claim under that statute. The trial court, therefore, improperly concluded that the plaintiff failed to satisfy the statutory requirements of a § 31-51m claim (i.e., a report made to a "public body" and exhaustion of administrative remedies). Section 660 (c) (1) of title 29 of the United States Code prohibits employers from discharging or discriminating against employees for filing complaints, instituting proceedings or otherwise exercising rights afforded by OSHA. Section 660 (c) (2) provides a remedy for employees who allege that they were discharged in retaliation for reporting violations of OSHA. Pursuant to § 660 (c) (2), an employee who

employee, or a person acting on behalf of the employee, reports, verbally or in writing, a violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation to a public body, or because an employee is requested by a public body to participate in an investigation, hearing or inquiry held by that public body, or a court action. . . . The provisions of this subsection shall not be applicable when the employee knows that such report is false.

"(c) Any employee who is discharged, disciplined or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later, in the superior court for the judicial district where the violation is alleged to have occurred or where the employer has its principal office, for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if such violation had not occurred. . . . Any employee found to have knowingly made a false report shall be subject to disciplinary action by his employer up to and including dismissal. . . ."

[4] In opposing the defendants' motion for summary judgment, the plaintiff also relied on the public policy against racial discrimination, as embodied in 42 U.S.C. § 2000e and General Statutes § 46a-60, to support her claim of wrongful discharge. The plaintiff has neither raised nor briefed this issue on appeal. Issues that are not briefed are deemed to be abandoned. See, e.g., *State* v. *James*, 211 Conn. 555, 588, 560 A.2d 426 (1989); *State* v. *Gaines*, 196 Conn. 395, 397–98 n.2, 493 A.2d 209 (1985); *Daniels* v. *Warden*, 28 Conn. App. 64, 65 n.1, 609 A.2d 1052, cert. denied, 223 Conn. 924, 614 A.2d 820 (1992).

believes that she was discharged in violation of § 660 (c) may, within thirty days of the discharge, file a complaint with the secretary of labor. If the secretary determines that the employee was terminated in retaliation for reporting violations of OSHA, he is required to bring an action against the employer in the United States District Court. 29 U.S.C. § 660 (c) (2). In any action brought pursuant to § 660 (c) (2), the court has jurisdiction to "restrain violations of [29 U.S.C. § 660 (c) (1)] and order all appropriate relief *including rehiring or reinstatement of the employee to his former position with back pay*." (Emphasis added.) 29 U.S.C. § 660 (c) (2).

In *Atkins* v. *Bridgeport Hydraulic Co.*, 5 Conn. App. 643, 501 A.2d 1223 (1985), we limited the circumstances under which an employee can bring a common-law cause of action for wrongful discharge. In *Atkins*, we stated that "[a] finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee *was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated*." (Emphasis added; internal quotation marks omitted.) Id., 648.

The Occupational Safety and Health Act provides a specific remedy for an employee who is terminated by her employer in retaliation for participating in any action to carry out the purpose of the federal statute. Here, the plaintiff availed herself of that remedy when she filed a complaint with the Hartford office of the Occupational Safety and Health Administration.[5] We

---

[5] Although the plaintiff's complaint was administratively closed in February, 1994, due to the plaintiff's "lack of response" to correspondence from the Hartford office of the Occupational Safety and Health Administration,

conclude that because OSHA provides a remedy for employees that claim retaliatory termination, the plaintiff cannot maintain her wrongful discharge action against the defendants.

Our conclusion that the existence of a statutory remedy under OSHA precludes the plaintiff's public policy wrongful discharge claim is supported by our decision in *Atkins* v. *Bridgeport Hydraulic Co.*, supra, 5 Conn. App. 648, and by several Connecticut Superior Court decisions.[6] See, e.g., *Brotherton* v. *Burndy Corp.*, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. CV 87-022481-S (September 24, 1990) (2 Conn. L. Rptr. 508) (right to file OSHA complaint precludes civil tort action based on *Sheets* doctrine for wrongful discharge); see also *Dais* v. *Laidlaw Transit, Inc.*, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 95-0146079-S (March 29, 1996) (16 Conn. L. Rptr. 392) (cause of action for wrongful discharge exists only when discharge violates public policy and employee is otherwise without statutory remedy). In addition, in *Napoleon* v. *Xerox Corp.*, 656 F. Sup. 1120, 1125 (D. Conn. 1987), the United States District Court for the District of Connecticut held that

the plaintiff was not deprived of her statutory remedy under OSHA. See *Holmes* v. *Schneider Power Corp.*, 628 F. Sup. 937, 939 (W.D. Pa.), aff'd, 806 F.2d 252 (3d Cir. 1986) (secretary's decision not to bring suit did not deprive plaintiff of statutory remedy).

[6] The dissent attempts to distinguish this case from *Atkins* by emphasizing that in *Atkins* the plaintiff had an explicit *state* statutory remedy under the Connecticut Fair Employment Practices Act. General Statutes § 46a-51 et seq. In *Atkins*, however, we did not distinguish between state and federal statutory remedies for wrongful discharge. Instead, we stated that the cases that have recognized a cause of action for wrongful discharge "have relied upon the fact that in the context of their case the employee was otherwise without *remedy* and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis added; internal quotation marks omitted.) *Atkins* v. *Bridgeport Hydraulic Co.*, supra, 5 Conn. App. 648, quoting *Wehr* v. *Burroughs Corp.*, 438 F. Sup. 1052, 1054 (E.D. Pa. 1977).

a plaintiff cannot maintain a common-law claim for wrongful discharge where she has an explicit statutory remedy for the defendant's alleged misconduct. See also *Donahue* v. *Unisys Corp.*, United States District Court, Docket No. H-89-670 (D. Conn. February 15, 1991) (interpreting *Sheets* to provide cause of action for public policy wrongful discharge only to those employees otherwise without remedy).[7]

Accordingly, for the reasons stated, we conclude that the trial court properly granted the defendants' motion for summary judgment as to the plaintiff's claim of wrongful discharge.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.

LAVERY, J., dissenting. I respectfully disagree with the majority opinion affirming the trial court's granting of summary judgment on the plaintiff's common-law allegation of wrongful discharge because the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq., provides a remedy and, therefore, I dissent.

---

[7] Other courts that have considered the issue also have concluded that the existence of a statutory remedy precludes a common-law action based on the public policy exception to the employment at-will doctrine. See, e.g., *Miles* v. *Martin Marietta Corp.*, 861 F. Sup. 73, 74 (D. Colo. 1994) (plaintiff may not base public policy wrongful discharge claim on alleged retaliation for filing OSHA report because statutory remedy available under OSHA); *Braun* v. *Kelsey-Hayes Co.*, 635 F. Sup. 75, 80 (E.D. Pa. 1986) (statutory remedy available under OSHA for retaliatory termination exclusive and preemptive of any state tort action); *Holmes* v. *Schneider Power Corp.*, 628 F. Sup. 937, 939 (W.D. Pa.), aff'd, 806 F.2d 252 (3d Cir. 1986) (noting Pennsylvania courts have found common-law action based on public policy exception only in cases where no statutory remedy available); *Wolk* v. *Saks Fifth Ave., Inc.*, 728 F.2d 221, 223–24 (3d Cir. 1984) (claim for wrongful discharge under common law may be maintained only in absence of statutory remedy); *Walsh* v. *Consolidated Freightways, Inc.*, 278 Or. 347, 351–52, 563 P.2d 1205 (1977) (plaintiff cannot maintain cause of action for wrongful discharge where alleged retaliatory nature of defendant's conduct falls within remedies afforded plaintiff under OSHA).

I would find that there are sufficient facts alleged to show that the plaintiff was discharged in retaliation for her reporting to the Connecticut State Dental Association (dental association) what she later reported to the Occupational Safety and Health Administration, that the defendants, dentists, left blood soaked debris in the office kitchen, on files, did not change surgical gloves between patients and did not practice universal precautions,[1] all in violation of Occupational Safety and Health Administration standards and regulations.

There is no doubt that if the allegations set forth in the complaint are true, the conduct is violative of public policy. In *American Dental Assn.* v. *Martin*, 984 F.2d 823, 824 (7th Cir.), cert. denied sub nom. *American Dental Assn.* v. *Reich*, 510 U.S. 859, 114 S. Ct. 172, 126 L. Ed. 2d 132 (1993), in upholding the regulation on blood-borne pathogens, the Seventh Circuit stated: "In 1991 the Occupational Safety and Health Administration promulgated a rule on occupational exposure to blood-borne pathogens. 56 Fed. Reg. 64004, 57 Fed. Reg. 29206, 29 C.F.R. § 1910.1030. The rule is designed to protect health care workers from viruses, particularly those causing Hepatitis B and AIDS, that can be transmitted in the blood of patients."

Since the majority upheld the trial court's granting of a summary judgment on the basis of failure to exhaust administrative remedies, I will not review the many violations of 29 C.F.R. § 1910.1030 that occurred if the plaintiff's allegations, which have not been tested, are true.

In *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 76, 700 A.2d 655 (1997), our Supreme Court stated:

---

[1] Sections 1910.1030 (b) of title 29 of the Code of Federal Regulations provides in relevant part: "Universal Precautions is an approach to infection control. According to the concept of Universal Precautions, all human blood and certain human body fluids are treated as if known to be infectious for HIV, HBV and other bloodborne pathogens. . . ."

"In *Sheets* v. *Teddy's Frosted Foods, Inc.*, [179 Conn. 471, 480, 427 A.2d 385 (1980)], in an effort to balance the competing interests of employers and employees, we recognized a public policy limitation on the traditional employment at-will doctrine. *Antinerella* v. *Rioux*, 229 Conn. 479, 492, 642 A.2d 699 (1994). In *Sheets*, we sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy." (Internal quotation marks omitted.)

"As a preliminary matter, we note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one that is only to be invoked when the reason for [the employee's] discharge . . . involves impropriety derived from some important violation of a public policy. *Carbone* v. *Atlantic Richfield Co.*, 204 Conn. 460, 470, 528 A.2d 1137 (1987). We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 477. Nevertheless, when there is a relevant state statute we should not ignore the statement of public policy that it represents. Id., 480.

"As a result of our careful review of the language, history, and public policy underlying the statutory provisions cited by the plaintiff in support of his claim, we conclude that this body of law expresses a clear and defined public policy requiring an employer who conducts business in Connecticut to provide a reasonably safe workplace to its employees. We note, for example, that although [General Statutes] § 31-49 was originally codified in 1902, the legislature has not repealed it despite the subsequent enactment of other statutes, such as the Workers' Compensation Act, which regulate safety in the workplace. . . . The legislature also

enacted [General Statutes] § 31-370, which is part of the Connecticut Occupational ·Safety and Health Act, to regulate safety in the workplace. Both §§ 31-49 and 31-370 reflect a broad legislative concern for the physical welfare and safety of Connecticut employees. Consequently, we are persuaded that the mandate of public policy that these statutes embody gives a Connecticut employee a cause of action for wrongful discharge against an employer transacting business in Connecticut if the employee is discharged for refusing to work under conditions that pose a substantial risk of death, disease or serious physical harm and that are not contemplated within the scope of the employee's duties."[2] (Citation omitted; internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 79–80.

I would hold contrary to the majority that when an Occupational Safety and Health Administration complaint is made, it is not the exclusive remedy for wrongful discharge and that a private, common-law state action for wrongful discharge exists.

---

[2] General Statutes § 31-49 provides: "It shall be the duty of the master to exercise reasonable care to provide for his servant a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work and fit and competent persons as his colaborers and to exercise reasonable care in the appointment or designation of a vice-principal and to appoint as such vice-principal a fit and competent person. The default of a vice-principal in the performance of any duty imposed by law on the master shall be the default of the master."

General Statutes § 31-370 provides: "(a) Each employer shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees.

"(b) Each employer shall, upon the written request of any employee, furnish such employee with a written statement listing the substances which such employee uses or with which such employee comes into contact that have been identified as toxic and hazardous by occupational safety and health standards, under Title 29 CFR 1910.1000 'Air Contaminant Code of Federal Regulations.'

"(c) Each employer shall comply with occupational safety and health standards promulgated under this chapter.

Although there is disagreement among some jurisdictions on this issue,[3] I believe the reasoning set forth by the New Jersey Appellate Division in *Cerracchio* v. *Alden Leeds, Inc.*, 223 N.J. Super. 435, 538 A.2d 1292 (1988), is more consistent with Connecticut's long held public policy of providing a safe workplace for employees.

The New Jersey Appellate Division stated: "As to plaintiff's OSHA claim, the trial judge dismissed plaintiff's suit because he viewed the OSHA statute as providing the exclusive remedy for retaliatory discharge for the filing of an OSHA complaint. 29 U.S.C. § 660 (c) prescribes: '(1) *No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [chapter]* or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this [chapter]. (2) *Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within thirty days after such violation occurs, file a complaint with the Secretary alleging such discrimination.* Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. *If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of para-*

"(d) Each employee shall comply with occupational safety and health standards and all regulations and orders issued pursuant to this chapter which are applicable to his own actions and conduct."

[3] See the majority opinion and the annotation in 75 A.L.R.4th 13 (1990) on liability for retaliation against at-will employees for public complaints or efforts relating to health or safety.

*graph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.* (3) Within 90 days of the receipt of a complaint filed under this subsection the Secretary shall notify the complainant of his determination under paragraph (2) of this subsection. . . .' It is clear that this statute does not 'create' a private right of action for an employee who is discharged for reporting a safety violation. *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980). The question, however, is whether it prohibits such an action. On its face, no such prohibition exists in the statute, and it seems to us that the statute does not preclude an employee from instituting an action in New Jersey, under a recognized tort or contract theory. A similar conclusion was reached in *Kennard v. Louis Zimmer Communications, Inc.*, 632 F. Supp. 635 (E.D. Pa. 1986), where the court allowed a discharged employee to bring a retaliatory discharge suit in federal court based on the Pennsylvania public policy tort exception to the employment-at-will doctrine where the employee alleged that her termination was in retaliation for having lodged a complaint with OSHA regarding work and health conditions. Although the court recognized that the prevailing authority is that no private right of action for an unlawful discharge exists under 29 U.S.C. § 660 (c), it observed that the employee was not alleging a private right of action pursuant to this section, but rather, was seeking to recover damages for wrongful discharge under a tort theory. 632 F. Supp. at 637 n.1. But see *King v. Fox Grocery Co.*, 642 F. Supp. 288 (W.D. Pa 1986); *Braun v. Kelsey-Hayes Co.*, 635 F. Supp. 75 (E.D. Pa. 1986); *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205 (Sup. Ct. 1977).

"That is the situation here as well. Plaintiff is not asserting a claim under 29 U.S.C. § 660, and indeed could not because that statute preempts such a filing

except by the Secretary of Labor. On the contrary, plaintiff has filed a tort action to recover damages based upon his discharge in violation of the public policy of this State. See *Velantzas* v. *Colgate-Palmolive Company, Inc.*, 109 N.J. 189, 191–192 [536 A.2d 237] (1988). This is a *Pierce*[4] claim which is entirely separate from the assertion of a claim under OSHA. It is clear to us that there is a strong public policy in New Jersey favoring safety in the workplace. As *Pierce* directs, we have gleaned this policy from legislation, more particularly N.J.S.A. 34:6A-3 which provides: 'Every employer shall furnish a place of employment which shall be reasonably safe and healthful for employees. Every employer shall install, maintain and use such employee protective devices and safeguards including methods of sanitation and hygiene and where a substantial risk of physical injury is inherent in the nature of a specific work operation shall also with respect to such work operation establish and enforce such work methods, as are reasonably necessary to protect the life, health and safety of employees, with due regard for the nature of the work required. L. 1965 c. 154 § 3.' See also *Shimp* v. *New Jersey Bell Telephone Co.*, 145 N.J. Super. 516 [368 A.2d 408] (Ch. Div. 1976). . . . In our view, the reporting of unsafe conditions in the workplace by an employee is action in furtherance of this firmly held policy. Concomitantly, retaliation against the reporting employee as a punitive measure and as a deterrent to other observers of unsafe conditions, directly affronts our policy in favor of safety. Thus, we hold that under *Pierce*, an employee in New Jersey may maintain a private action in tort or contract for retaliatory discharge as a result of the filing of an OSHA complaint

---

[4] *Pierce* v. *Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505 (1980), is New Jersey's counterpart to *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 471, which recognized that an employee may maintain an action for wrongful discharge when the discharge is in violation of a clear mandate of public policy.

because such discharge contravenes our public policy." (Emphasis in original.) *Cerracchio* v. *Alden Leeds, Inc.,* supra, 223 N.J. Super. 444–46.

In this case, the plaintiff complained to the dental association, which is a professional society of dentists and not a state agency. The plaintiff's legitimate complaint resulted in her termination because the defendants learned from the dental association that she had made the complaint. After the discharge, the plaintiff complained to the Occupational Safety and Health Administration. There is at least a question of fact as to whether she pursued her Occupational Safety and Health Administration complaint as far as she could. I would reverse not only because there is a question of fact but, more importantly, because the Occupational Safety and Health Administration complaint is neither the exclusive remedy nor an adequate remedy for the same reasons set forth in *Cerracchio* v. *Alden Leeds, Inc.,* supra, 223 N.J. Super. 444–46. As set forth in *Parsons* v. *United Technologies Corp.,* supra, 243 Conn. 79, it has long been the public policy of Connecticut to require an employer to provide a reasonably safe workplace.

In the two main cases cited by the majority, *Atkins* v. *Bridgeport Hydraulic Co.,* 5 Conn. App. 643, 501 A.2d 1223 (1985), and *Napoleon* v. *Xerox Corp.,* 656 F. Sup. 1120 (D. Conn. 1987), the plaintiffs had an explicit state statutory remedy that was the exclusive remedy. In this case, the plaintiff does not have an explicit state statutory remedy providing an exclusive remedy.

"However, in the instant case, unlike *Sheets,* the plaintiff has an explicit state statutory remedy for the defendant's alleged misconduct under the comprehensive procedural provisions of the Connecticut Fair Employment Practices Act ('CFEPA'), [General Statutes] §§ 46a-51 et seq. Under these circumstances, the plaintiff may not circumvent the CFEPA by the assertion of

[a] private cause of action. See *Powell* v. *Feroleto Steel Co.*, 659 F. Supp. 303, 304–305 (D. Conn. 1986) (TFGD). As stated in *Murray* v. *Bridgeport Hospital*, 40 Conn. Supp. 56, 480 A.2d 610 (1984): 'when an allegation is made with respect to a protected category under the Fair Employment Practices Act . . . the exclusive remedy is in the procedures established by the act, and there is no cause of action for a private lawsuit.' Id., at 60, 480 A.2d 610. See also *Sullivan* v. *Board of Police Commissioners*, 196 Conn. 208, 216, 491 A.2d 1096 (1985) (the CFEPA does not provide claimants with a private right of action unless the discriminatory employer is a state agency); accord *Atkins* v. *Bridgeport Hydraulic Co.*, [supra, 5 Conn. App. 647]." *Napoleon* v. *Xerox Corp.*, supra, 656 F. Sup. 1125.

For the reasons stated, I would hold that the plaintiff has a common-law claim of wrongful discharge and that her complaint to the Occupational Safety and Health Administration does not prevent her from pursuing that claim. I would reverse the judgment and remand the case to the trial court for further proceedings on the count of wrongful discharge only, as I agree with the majority on the other claims.