[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Lori A. Trombley, was employed by the defendant, Convalescent Center of Norwich, as a food services supervisor/dietary manager. The plaintiff alleges that her employment was governed by an employee handbook which required that she be terminated for "just cause." The plaintiff further alleges that the defendant breached the terms of this employment contract when it terminated the plaintiff for raising certain health and safety concerns.
On September 17, 1998, the plaintiff brought a five count complaint against the defendant Convalescent Center and against her immediate supervisor, Elaine Cole, for breach of express employment contract (count one), breach of implied-in-fact employment contract (count two), violation of General Statutes §31-51m (count three), wrongful discharge (count four) and breach of implied covenant of good faith and fair dealing (count five).
On August 17, 1998, the defendants filed a motion for summary judgment as to all five counts of the plaintiff's complaint. The defendants also filed a memorandum of law in support.
On February 2, 1999, the plaintiff filed an objection along with a supporting memorandum of law.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Doucette v. Pomes, 247 Conn. 422,452, ___ A.2d ___ (1999).
I. COUNTS ONE TWO-BREACH OF CONTRACT
The plaintiff alleges that her employment was governed by an employee handbook which required that her termination be based solely upon just cause.
Count one of the complaint alleges that the defendant breached an express contract with the plaintiff by discharging CT Page 6760 the plaintiff without just cause. Alternatively, count two alleges that the defendant breached an implied contract with the plaintiff.
The defendant argues that it is entitled to summary judgment as to counts one and two because the plaintiff has always served as an at will employee. Additionally, the defendant argues that the plaintiff was discharged for insubordination in accordance with the terms of the employee handbook.
In opposition, the plaintiff argues that there are material issues of fact as to whether a contract of employment existed and whether the defendant complied with the terms of the employment contract in its termination of the plaintiff.
Our Supreme Court has noted that "all employer-employee relationships not governed by express contracts involve some type of implied contract of employment. There cannot be any serious dispute that there is a bargain of some kind; otherwise, the employee would not be working." (Internal quotation marks omitted.) Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., 234 Conn. 1, 13, 662 A.2d 89 (1995). "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus, [a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Id., 14.
This general rule, however, can be modified by the agreement of the parties. Id., 15. However, in order to prove that the default rule of employment at will has been modified, the plaintiff must prove "by a fair preponderance of the evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to [her] under which [she] could not be terminated without just cause." Id. "[U]nder appropriate circumstances, the terms of an employment manual may give rise to an express or implied contract between employer and employee. . . . in the absence of definitive contractual language, the question of whether the parties intended the manual to constitute part of the contract is a question of fact to be determined by the trier of fact." (Citation omitted.) Carbone v. Atlantic Richfield Co.,204 Conn. 460, 471-72, 528 A.2d 1137 (1987). Nevertheless, the court inFinely v. Aetna Life Casualty Co., held that employers can CT Page 6761 protect themselves against employee contract claims based on statements made in personnel manuals "by including appropriate disclaimers of the intention to contract." Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199 n. 5, 520 A.2d 208 (1987).
The employee handbook at issue contains none of the "eschewing" language referred to in Finley v. Aetna Life Casualty, supra, 202 Conn. 199.
The handbook provides for a progressive disciplinary system whereupon an employee may receive oral or written warnings or be discharged, depending on the nature and severity of the infraction. Plaintiff's Exhibit D: Employee Handbook, p. 19.
The handbook specifically lists 19 infractions which could subject an employee to discipline. Exhibit D, p. 19. The handbook cautions, however, that the list of infractions are "examples of some, but not all situations which may subject [an employee] to disciplinary action, including discharge." Id.
This disciplinary section of the manual does not, however, emphasize to employees that they are only at will employees and that, despite the disciplinary procedure referred to in the manual, they could be terminated at will.
Further, the manual contains language in its introductory page which evinces an obligation on the part of the defendant to follow the terms contained therein: "[t]his booklet will acquaint you with our commitments to you and to our residents, and will provide you with quick and easy reference to your privileges, benefits and duties . . ." (Emphasis added.) Exhibit D, p. 2.
If as here, an employee is made aware of an employer policy through a manual and, as here, there is testimony that the employee did rely on such policy, then the fact of continued loyal employment, which is the very objective of creating such manuals may form the basis of contract formation. See Finley v.Aetna Life Casualty, supra, 202 Conn. 190, citing Toussant v.Blue Cross, 292 S.W.2d 880, 892 (1980).
Furthermore, assuming the employee handbook constituted an express/implied contract whereby the plaintiff could only be discharged for cause, whether such cause existed requires resolution by a trier of fact. CT Page 6762
Accordingly, the motion for summary judgment as to counts one and two is denied.
II. COUNT THREE-VIOLATION OF GENERAL STATUTES § 31-51m
The defendant contends that the third count of the plaintiff's complaint is improperly brought pursuant to General Statutes § 31-51m because the plaintiff has failed to exhaust all available administrative remedies.
General Statutes § 31-51m specifically requires that: "[a]ny employee who is discharged, disciplined, or otherwise penalized by his employer in violation of the provisions of subsection (b) may, after exhausting all available administrative remedies, bring a civil action, within ninety days of the date of the final administrative determination or within ninety days of such violation, whichever is later." (Emphasis added.) General Statutes § 31-51m(c) (rev'd to 1989).
Several courts have interpreted the aforementioned statute to require a plaintiff to exhaust her administrative remedies prior to instituting a 31-51m action. See Brotherton v. Burndy Corp. , Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 022481 (2 Conn. L. Rptr. 508). See also Greene v.Meachum, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 378623 (January 8, 1990, Stengel,J.) ("the construction of 31-51m specifically requires the exhaustion of administrative remedies"); Holub v. Babcock King,Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 316108 (November 4, 1994, Levin, J.) (12 Conn. L. Rptr. 634) ("plaintiff cannot bring his action pursuant to General Statutes 31-51m until he has exhausted all available administrative remedies").
In the present case, the plaintiff may pursue a retaliatory discharge claim pursuant to 29 U.S.C. § 660 (c)(1). Section 660 (c)(1) prohibits employers from discharging or discriminating against employees for filing complaints, instituting proceedings or otherwise exercising rights afforded by OSHA. Section 660 (c)(2) provides a remedy for employees who allege that they were discharged in retaliation for reporting violations of OSHA. Pursuant to 660(c)(2), an employee who believes that she was discharged in violation of 660(c) may, within thirty days of the discharge, file a complaint with the Secretary of Labor. If the Secretary determines that the employee was terminated in CT Page 6763 retaliation for reporting violations of OSHA, he is required to bring an action against the employer in the United States District Court. 29 U.S.C. § 660 (c)(2).
Therefore, this court finds that the plaintiff must first exhaust her administrative remedies prior to bringing a claim under General Statutes § 31-51m. Accordingly, the motion for summary judgment as to count three is granted.
III. COUNT FOUR-WRONGFUL DISCHARGE
In Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 480,427 A.2d 385 (1980), the Connecticut Supreme court "sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy. Burnhamv. Karl Gelb, P.C., 50 Conn. App. 385, 392, 717 A.2d 811
(1998).
In the present case, the plaintiff relies on the public policy prohibiting employers from terminating employees in retaliation for reporting occupational safety and health violations. Specifically, the plaintiff relies on General Statutes § 31-51m to support her cause of action for public policy wrongful discharge.
In Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643,501 A.2d 1223 (1985), the court limited the circumstances under which an employee can bring a common-law cause of action for wrongful discharge. In Atkins v. Bridgeport Hydraulic Co., the court stated that "[a] finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Internal quotation marks omitted.) Id., 648.
Several lower court decisions have similarly held that where an adequate remedy exists, a public policy wrongful discharge claim may not be maintained. See Burnham v. Karl Gelb, P.C., supra, 50 Conn. App. 385, and cases cited therein. See alsoSherman v. Sedgwick James of Connecticut, Superior Court, CT Page 6764 judicial district of Fairfield at Bridgeport, Docket No. 326150 (February 10, 1997, Melville, J.) (wrongful discharge claim barred because General Statutes § 31-51m provides an adequate statutory remedy); Holub v. Babcock King, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 319683 (January 18, 1996, Hartmere, J.) (wrongful discharge claim barred because General Statutes 31-15m provides an adequate statutory remedy).
The plaintiff has a remedy available for her retaliatory discharge claim under General Statutes § 31-51m after she has exhausted her administrative remedies. Therefore, the motion for summary judgment as to count four is granted.
IV. COUNT FIVE-IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
The defendant argues that a claim for breach of the duty of good faith and fair dealing is unavailable when there is an adequate statutory remedy to address the claim.
Here, the plaintiff has pursued a statutory remedy for her public policy wrongful discharge claim under General Statutes §31-51m (count three). "To the extent the `public policy' sought to be vindicated is embodied . . in General Statutes . . . §31-51m, it is addressed through the [third count] . . . a breach of the implied covenant of good faith and fair dealing is not available when there is an adequate statutory remedy." (Citations omitted.) Rothberg v. United Illuminating Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 391576 (February 5, 1997, Silbert, J.) (18 Conn. L. Rptr. 690. The plaintiff argues, however, that the plaintiff's right to pursue a claim for breach of the implied covenant of good faith and fair dealing arises out of her employment contract, and therefore, the claim is separate and distinct from her rights pursuant to §31-51m.
It is true that the Connecticut Supreme Court recognizes claims for breach of the implied covenant of good faith and fair dealing in employment contracts. See Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 479 A.2d 781 (1984).
Since the plaintiff has alleged a contract with terms other than at will, the covenant of good faith and fair dealing is relevant. "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything CT Page 6765 that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238,618 A.2d 501 (1992). "Bad faith means more than mere negligence; it involves a dishonest purpose." Id., 237.
Nevertheless, the allegations in the fifth count of the complaint are insufficient to support a claim for breach of the implied covenant of good faith and fair dealing. The fifth count simply incorporates the public policy violations alleged in count three (violation of § 31-51m). As previously noted, the plaintiff has an adequate statutory remedy for these allegations. SeeRothberg v. United Illuminating Co., supra, Superior Court, Docket No. 391576. There are no new allegations of improper motive in count five, except the statement that the defendant was motivated by "bad faith, sinister motive or interest." (Complaint, Count five, ¶ 2).
The plaintiff's allegations that the defendant's conduct was in bad faith is a legal conclusion which cannot survive a motion for summary judgment. A party's conclusory statements may not constitute evidence sufficient to establish the existence of disputed material facts. See Gupta v. New Britain GeneralHospital, 239 Conn. 574, 583, 687 A.2d 111 (1996).
This court finds there are no allegations beyond the public policy violations alleged in count three to support a claim for breach of the implied covenant of good faith and fair dealing.
Accordingly, the motion for summary judgment as to count five is granted.
V. DEFENDANT ELAINE COLE-INDIVIDUALLY
The plaintiff has also asserted the aforementioned claims against her former supervisor, Elaine Cole, in an individual capacity.
The defendant argues that Elaine Cole is not individually liable to the plaintiff because Ms. Cole acted as an agent for the principal employer at all relevant times.
In opposition, the plaintiff argues that the existence of an agency relationship is a question of fact. Moreover, the plaintiff argues that if an agency relationship is found to exist, genuine issues of fact exist as to whether the plaintiff CT Page 6766 acted beyond the scope of her authority.
It is true that an agent for a disclosed principal may not be held individually liable. See Zanoni v. Hudon, 48 Conn. App. 32,38, 708 A.2d 222 (1998). However, an agent may be held personally liable if she did not act legitimately within the scope of her employment but used the corporate power improperly for personal gain. See Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 60,480 A.2d 610 (1984).
In the present case, it is clear under the facts presented, that the defendant Convalescent Center granted Ms. Cole the authority to hire and fire employees on behalf of the company as part of her supervisory powers. Ms. Cole, exercised this supervisory power when she terminated the plaintiff's employment, allegedly due to insubordination on the part of the plaintiff. Accordingly, Ms. Cole was an agent of the defendant Convalescent Center at the time in question.
Nevertheless, genuine issues of fact exist as to whether the Ms. Cole acted within the scope of her authority when she terminated the plaintiff's employment.
Adina Stern, owner of the defendant company, testified at her deposition that Elaine Cole had exclusive authority to hire and fire employees of the defendant company, and that she was expected to comply with the provisions of the employee handbook in administering discipline and terminating employees. (Exhibit A, p. 15, 21). Ms. Stern also testified that Elaine Cole would be subject to termination if she failed to follow the provisions of the handbook. (Exhibit A, p. 24.). Therefore, it necessarily follows that Ms. Cole lacked discretion in administering the disciplinary procedures set out in the employee handbook.
Despite this fact, the plaintiff alleges that she was terminated contrary to the progressive disciplinary plans set forth in the employee handbook. See plaintiff's memorandum, p. 14-15.
Thus, genuine issues of fact exist as to whether Ms. Cole acted outside the scope of her authority when she terminated the plaintiff's employment.[1] Accordingly, the motion for summary judgment as to counts one and two are also denied as to Elaine Cole. CT Page 6767
Martin, J.