[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DEFENDANTS' MOTION TO STRIKE (#106)
This is an action by the plaintiff in four counts sounding in wrongful discharge, breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA).
The defendants have moved this court to strike the First, Third and Fourth Counts of the plaintiffs complaint for the reasons herein after stated, The court heard oral argument regarding the motion to strike and reserved decision.
In the first count, the plaintiff alleges that he was employed CT Page 4543 by Sheldon precision. The plaintiff alleges that prior to his recruitment with Sheldon Precision, the plaintiff was employed for twenty years by Isely Co., Inc. in the field of quality control in the manufacturing process, and had achieved the position of quality control manager. The plaintiff alleges that prior to being hired by Sheldon Precision, the plaintiff told Sheldon Precision that the plaintiff would have to forgo certain benefits of being employed by Isely Co., Inc. if the plaintiff accepted a position with Sheldon Precision. The plaintiff further alleges that in the course of negotiation with Sheldon Precision and in the representations of Sheldon Precision's offer of employment, the plaintiff proposed terms of employment which Sheldon Precision accepted. The plaintiff alleges that he terminated employment with Isely Co., Inc. and accepted employment with Sheldon Precision in reliance on the truth of the defendant's representations and implied and express agreement of employment. The plaintiff alleges that his proposed terms included: that his employment with Sheldon Precision would be a long term relationship in exchange for the plaintiff leaving his present employer; Sheldon Precision would strive to achieve accreditation of the ISO 9002 standard; the plaintiff would have the authority and responsibility for the enforcement of the quality control standards; and Sheldon Precision would follow the plaintiffs recommendations which were reasonably necessary to achieve ISO 9002 accreditation.
The plaintiff further alleges that in the course of his employment, the plaintiff informed the plant manager, Boutot, of defective shipments of goods, and the plaintiff refused to sign-off and file a false certification of compliance on defective production shipments. The plaintiff alleges that Boutot and Sheldon Precision engaged in a scheme of concealing the sale of defective parts and in other schemes, which compromised quality control standards and promoted the sale of defective and poor quality goods, and asked the plaintiff to ignore and approve the defective and poor quality goods. The plaintiff alleges that, through said conduct, Sheldon Precision and Boutot engaged in a wide-ranging scheme and pattern to deceive and defraud its customers, in violation of Connecticut criminal statutes and the Major Frauds Act, 18 U.S.C. § 1031. The plaintiff further alleges that as a result of said conduct, the plaintiff was forced to risk criminal sanctions or jeopardize continued employment with Sheldon Precision. The plaintiff alleges that he informed the principles and owners of Sheldon Precision of said schemes to conceal and sell defective and poor quality goods, and CT Page 4544 was fired on April 2, 1996 as a result of the plaintiffs refusal to take part in these schemes. The plaintiff alleges that his discharge constitutes retaliatory discharge and violates public policy. The plaintiff further alleges that the Sheldon Precision and Boutot owe an implied and express duty to the plaintiff of good faith and fair dealing, that Sheldon Precision and Boutot breached such duty, and that as a result the plaintiff incurred damages.
In the third count, the plaintiff alleges that through the plaintiffs express and implied employment agreement, and the representations of employment, the plaintiff had a business relationship and employment with Sheldon Precision. The plaintiff further alleges that Boutot tortiously interfered with the plaintiffs contractual relationship and business expectancy, which caused the plaintiff to incur damages. In the fourth count, the plaintiff alleges that the acts of Boutot and Sheldon Precision were immoral, unethical, oppressive, unscrupulous and in violation of public policy, thus causing substantial injury to the plaintiff, consumers, competition and other businesses, in violation of the Connecticut Unfair Trade Practices Act (CUTPA).
Sheldon Precision and Boutot filed a motion to strike the first, third and fourth counts of the plaintiffs complaint on October 1, 1998. As required by Practice Book § 10-42, Standard Precision and Boutot have filed a memorandum of law in support of their motion to strike. The plaintiff filed an objection to the defendants' motion to strike on October 6, 1998, claiming that the motion was untimely. The objection was overruled on January 4, 1999, because the motion was timely, given the continued pursuit of requests to revise. The plaintiff filed a second objection to defendants' motion to strike on September 13, 1999.
"The purpose of a motion to strike is to test . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270, 709 A.2d 558 (1998). In ruling on a motion to strike, the role of the trial court is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action." Napoletano v. Cigna Healthcare ofConnecticut, Inc., 238 Conn. 216, 232-33, 680 A.2d 127
(1996). Yet, "the court is limited to the facts alleged in the CT Page 4545 complaint." (Internal quotation marks omitted.) Waters v.Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover. . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted.) Pamela B. v. Ment,244 Conn. 296, 308, 709 A.2d 1089 (1998). "Practice Book . . . §10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." Id., 325.
Sheldon Precision and Boutot argue that the first count should be stricken because the plaintiff does not claim to be an employee at will, and therefore, does not properly allege a wrongful discharge claim. In Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 427 A.2d 385 (1980), our Supreme Court "sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety derived from some important violation of public policy. . . . In doing so [the Court] recognized a public policy limitation on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees. . . . In Morris v. Hartford Courant Co.,
[200 Conn. 676], 680, [513 A.2d 66 (1986)], [the Court] recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy." (Citations omitted; internal quotation marks omitted.) Daleyv. Aetna Life Casualty Co., 249 Conn. 766, 797,734 A.2d 112 (1999).
In Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643,501 A.2d 1223 (1985), the circumstances under which an employee could bring a common-law cause of action for wrongful discharge was limited. "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." Id., 648; Burnham v. KarlCT Page 4546and Gelb. P.C., 50 Conn. App. 385, 395, 717 A.2d 811 (1998). "The existence of a statutory remedy . . . precludes . . . [a] public policy wrongful discharge claim." Atkins v.Bridgeport Hydraulic Co., supra, 5 Conn. App. 648;Burnham v. Karl and Gelb. P.C., supra, 50 Conn. App. 395. Similarly, certain employment contracts, such as collective bargaining agreements, can preclude a claim for wrongful discharge if the claim is not waived by the agreement preempted by federal law. Anderson v.Coca Cola Bottling Co. of New York, Inc. 772 F. Sup. 77 (D.Conn. 1991). Yet, a claim for retaliatory discharge is not precluded because it is not preempted by federal statute. Id. The plaintiff does not need to specifically allege an employment at-will situation in order to allege wrongful discharge. "[A]ll employer-employee relationships not governed by express contracts involve some type of implied contract of employment. . . . In the absence of . . . [express contract] language . . . the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." (Citations omitted; internal quotation marks omitted.)Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 53 1-32, 733 A.2d 197 (1999).
The plaintiff, however, alleges that he and Sheldon Precision agreed upon terms of employment. The court finds that these terms could be construed as an inducement for the plaintiff to accept employment at Sheldon Precision and, as such, they could provide the basis for the finder of the facts to find that an employment contract was created. See Torosyan v. Boehringer IngelheimPharmeceuticals, Inc., 234 Conn. 1, 662 A.2d 89 (1995). Even if a claim wrongful discharge applies only to employment at-will, and count one alleges the existence of an employment contract, count one should not be stricken because count one alleges that Sheldon Precision and Boutot breached and implied and express duty of good faith and fair dealing to the plaintiff. "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . Gupta v. New Britain General Hospital,239 Conn. 574, 598, 687 A.2d 111 (1996). Essentially, it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. Magnon v. Anaconda Industries, Inc., 193 Conn. 558, 567,479 A.2d 781 (1984). Conversely, bad faith means more than mere negligence; it involves a dishonest purpose. . . . Gupta v. NewBritain General Hospital, supra, 239 Conn. 598." (Citation omitted; CT Page 4547 internal quotation marks omitted.) Middletown Commercial Associate v.Middletown, 53 Conn. App. 432, 437, 730 A.2d 1201 (1999). Consequently, the motion to strike count one should be and is hereby denied because an employee can allege a breach of good faith and fair dealing in an employment at will situation, as well as in a contractual employment situation.
Boutot argues that the third count should be stricken because Boutot is the plant manager of Sheldon Precision, and therefore, cannot interfere on behalf of Sheldon Precision with its alleged employment agreement with the plaintiff "[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights. . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and as a result, the plaintiff claimed to have suffered actual loss."Appleton v. Board of Education, 53 Conn. App. 252, 267,730 A.2d 88 (1999). In most circumstances, there can be no tortious interference with contractual relations by someone who is a party to the contract, either directly or indirectly, because "[t]he general rule is that the agent may not be charged with having interfered with a contract of the agent's principal . . . [A]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract . . . [the agent, however,] could be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain." (Citations omitted; internal quotation marks omitted.) Id.
Because agents can be liable for tortious interference with a contractual relationship if the agent acts outside the scope of his authority, Boutot, as the plant manager, could be found to have tortiously interfered with the plaintiffs employment with Sheldon Precision. For that reason, the motion to strike count three should be and is hereby denied.
Sheldon Precision and Boutot argue that the fourth count should be stricken because the plaintiff does not properly allege a claim under CUTPA because the underlying allegations arise out of an employment relationship. "In order to allege a CUTPA violation CT Page 4548 properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a `trade or business.' . . . [and] [a]lthough an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 669-70,613 A.2d 838 (1992). An employer-employee relationship does not rise to the level of trade or commerce cognizable under CUTPA. UnitedComponents, Inc. v. Wdowiak, 239 Conn. 259, 684 A.2d 693 (1996). Count four relates to the employment relationship of the plaintiff and Sheldon Precision, and therefore, does not allege that the acts occurred in the conduct of trade or commerce as defined by General Statutes § 42-110a(4).
For that reason, the motion to strike count four should be and is hereby granted.
Joseph W. Doherty, Judge