SANDRA APPLETON *v.* BOARD OF EDUCATION OF THE TOWN OF STONINGTON ET AL.
(AC 17778)

Schaller, Hennessy and Sullivan, Js.

v. *Evans*, supra, 165 Conn. 70; see *State* v. *Velez*, 30 Conn. App. 9, 20, 618 A.2d 1362, cert. denied, 225 Conn. 907, 621 A.2d 289 (1993).

Argued December 3, 1998—officially released May 11, 1999

*Gilbert Shasha*, with whom, on the brief, was *Juri E. Taalman*, for the appellant (plaintiff).

*Michael C. Deakin,* with whom, on the brief, was *Peter D. Clark,* for the appellees (defendants).

*Opinion*

HENNESSY, J. The plaintiff, Sandra Appleton, appeals from the judgment rendered following the trial court's granting of the defendants' motion for summary judgment on all three counts of her complaint. The plaintiff brought an action against the defendants, the Stonington board of education (board), Cherri Rifenburg, principal of Deans Mill School, and Anthony Vacca, assistant principal of Deans Mill School,[1] alleging breach of contract against the board, intentional infliction of emotional distress against all three defendants, and tortious interference with a contract against the defendants Rifenburg and Vacca. The plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment (1) as to count one of the complaint, because the trial court improperly found that (a) the trial court lacked jurisdiction because the plaintiff failed to exhaust her administrative remedies, (b) the plaintiff voluntarily resigned her position and (c) as a matter of law, there can be no discharge where there has been a resignation, (2) as to count two of the complaint, because the trial court improperly concluded that, because the plaintiff was represented by counsel and voluntarily resigned her position, as a matter of law, she cannot claim intentional infliction of emotional distress and (3) as to count three of the complaint, because the trial court improperly concluded, as a matter of law, that the defendants Rifenburg and Vacca could not tortiously interfere with the contract because they were employees of the board and parties to the contract. We reverse the judgment of the trial court in part and affirm it in part.

---

[1] Reference to the defendants in this opinion includes all three defendants unless otherwise specified.

The following undisputed facts are relevant to this appeal. The plaintiff was a tenured teacher who had a contract with the board that began in 1963. Beginning in September, 1995, Rifenburg voiced her displeasure with the plaintiff because she believed that the plaintiff failed to monitor a student properly concerning attendance at an after school program. The particular incident involved a situation in which one of the plaintiff's students boarded a school bus for home when he was supposed to be attending the after school program. The student's parents, who were not at home at the time, registered a complaint with the school.

Subsequently, the plaintiff's competency as a teacher was questioned by the defendants. On September 15, 1995, Rifenburg and a school psychologist met with the plaintiff in her classroom following a report by another teacher that the plaintiff was acting in a strange manner. During this period, Vacca and Rifenburg expressed concern about the plaintiff's health.

On September 18, 1995, Rifenburg informed the plaintiff that she would be placed on a paid leave of absence. Subsequently, a series of discussions and negotiations arose between the interim superintendent of schools, the board's attorney, counsel for the Connecticut Education Association (CEA), the president of the Stonington Education Association, the plaintiff's union representative and the plaintiff. The plaintiff submitted to two psychological evaluations at the defendants' request. The evaluations indicated that the plaintiff was capable of returning to work. As a result of the negotiations, a memorandum of agreement was drafted and signed by the parties. As part of the agreement, the plaintiff agreed to sign a letter of resignation. On February 5, 1996, the plaintiff submitted a signed letter of resignation to the interim superintendent of schools, which was to be effective in June, 1996, the close of the school year. The plaintiff was allowed to return to

work as a curriculum assistant until her resignation was effective.

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book § 384 [now § 17-49] provides that summary judgment 'shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citations omitted; internal quotation marks omitted.) *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 692–93, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998).

I

The plaintiff first claims that the trial court improperly granted summary judgment on the breach of contract claim. Specifically, the plaintiff argues that the trial court improperly determined that it did not have jurisdiction, that she had voluntarily resigned and that, as a matter of law, there can be no discharge when there is a resignation.

A

The plaintiff argues that the trial court improperly determined that it did not have subject matter jurisdiction to hear the breach of contract claim because the

plaintiff failed to exhaust her administrative remedies. We agree.

The trial court ruled that "this count fails as plaintiff did not exhaust her administrative remedies through the grievance procedure set out in her collective bargaining agreement. . . . Without such exhaustion, this court has no jurisdiction." To support its conclusion, the court points to the language of article 28, § A, of the collective bargaining agreement. Article 28, § A, lists the items that are *not* to be considered grievances. Subsection (b) excludes "[a] complaint of a teacher which arises by reason of the termination of his/her employment relationship with Stonington Public Schools . . . ." The terms of the bargaining agreement, therefore, exclude the subject matter of the plaintiff's complaint from the grievance procedures. In her complaint, the plaintiff alleged that the board breached her contract by terminating her without good cause when it suspended her for an indefinite period.

We conclude, therefore, that the collective bargaining agreement did not deprive the trial court of jurisdiction to hear the matter. The defendant argues, however, that even if the plaintiff's complaint did not fall within the terms of the bargaining agreement, she was required to follow the tenets of General Statutes § 10-151, the Teacher Tenure Act. Section 10-151 provides for a specific procedure for a tenured teacher to appeal to the board of education to challenge a proposed termination and includes a provision for a hearing before a single hearing officer. We are not persuaded by that argument.

In *Geren* v. *Board of Education*, 36 Conn. App. 282, 650 A.2d 616 (1994), cert. denied, 232 Conn. 907, 653 A.2d 194 (1995), this court rejected the plaintiff's claim [6] that the trial court improperly denied his motion for a directed verdict because the exclusive forum for determining the voluntariness of a resignation in a

breach of an employment contract claim is an administrative hearing pursuant to § 10-151. In *Geren*, we held that "[t]he determination of voluntariness . . . is logically prior to and, thus, outside the scope of a hearing pursuant to § 10-151." Id., 296; see also *Mendillo* v. *Board of Education*, 246 Conn. 456, 464–70, 717 A.2d 1177 (1998) (plaintiff in wrongful constructive discharge claim not required to exhaust statutory remedies under § 10-151 or contractual administrative remedies). Therefore, the plaintiff would need to follow the tenets of § 10-151 only after an initial determination was made that her resignation was involuntary.

B

The plaintiff argues that the trial court improperly inferred from the facts that she voluntarily resigned from her position. Specifically, the plaintiff argues that she was placed on paid leave of absence, not allowed to return to her classroom and coerced into signing the agreement and resignation letter, believing that she had no other choice.

In support of the defendants' motion for summary judgment, the trial court had before it an agreement and a resignation letter signed by the plaintiff, and evidence that a negotiated settlement existed in which the plaintiff was represented by counsel for the CEA and the president of her local union. Additionally, the plaintiff admitted in her affidavit in support of her objection to the defendant's motion for summary judgment that she intended to retire at the end of the 1996 school year.[2]

---

[2] The plaintiff stated in her affidavit in support of her opposition to the defendants' motion for summary judgment: "On or about August 29, 1995, the first day of that school year, Cherri Rifenburg . . . came to my classroom and represented that several parents had called upset that I would be retiring halfway through the school year. I told Rifenburg that she knew I would not be retiring until the end of the year." In addition, the plaintiff also signed a memorandum of agreement that stated that "Appleton at the present time, and for a considerable period of time, has anticipated retire-

Countering those facts was a statement by the plaintiff contained in her pleadings that she had "reluctantly" signed the agreement.

"Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, 49 Conn. App. 152, 158, 714 A.2d 21, cert. denied, 247 Conn. 905, 720 A.2d 516 (1998).

The plaintiff further argues that intent is a question of fact that is ordinarily inferred from one's conduct and, as such, should be determined by the finder of fact and not by the trial court on a motion for summary judgment. "We recognize that summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . . The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. Indeed, the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to [employment termination] cases than to commercial or other areas of litigation. . . . Our Supreme Court has held that even with respect to questions of motive, intent and good faith, the party

ment as a certified professional employee in the Stonington public schools at the end of the academic year in June of 1996."

opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." (Citation omitted; internal quotation marks omitted.) *Reynolds* v. *Chrysler First Commercial Corp.*, 40 Conn. App. 725, 731–32, 673 A.2d 573, cert. denied, 237 Conn. 913, 675 A.2d 885 (1996).

In this case, the board supported its motion for summary judgment with ample evidence to indicate that there was no genuine issue of material fact as to whether the plaintiff voluntarily resigned. The plaintiff, in opposing the motion for summary judgment, failed to present a factual predicate for her argument that her resignation was not voluntary and, therefore, failed to demonstrate a genuine issue of material fact. Under these circumstances, we conclude that the trial court properly determined that there was no genuine issue of material fact with regard to whether the plaintiff voluntarily resigned from her position with the Stonington school system.

C

The plaintiff further claims that the trial court improperly concluded that there can be no constructive discharge, as a matter of law, when there has been a voluntary resignation. Specifically, the plaintiff argues that case law indicates that a constructive discharge can occur when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign and, in this case, there is a question of material fact as to whether the plaintiff's resignation was the result of constructive discharge.

The trial court determined that "[a]s to count one, constructive discharge, the motion for summary judgment is granted. By her own admission . . . plaintiff

voluntarily resigned her position. There can be no discharge when there has been a resignation. *Seery* v. *Yale-New Haven Hospital*, 17 Conn. App. 532, 540, 554 A.2d 757 (1989)." We disagree with the trial court's analysis of this claim as a constructive discharge claim and the trial court's reliance on *Seery* for the proposition that when there is a resignation there cannot be a discharge. " 'Normally, an employee who resigns is not regarded as having been discharged, and thus would have no right of action for *abusive discharge*.' . . . Through the use of constructive discharge, [however,] the law recognizes that an employee's 'voluntary' resignation may be, in reality, a dismissal by the employer." (Citation omitted; emphasis added.) Id. " 'Constructive discharge occurs when an employer renders an employee's working conditions so difficult and intolerable that a reasonable person would feel forced to resign.' . . . *A claim of constructive discharge* must be supported by more than the employee's subjective opinion that the job conditions have become so intolerable that he or she was forced to resign." (Citations omitted; emphasis added.) Id. Therefore, through a claim of constructive discharge, a voluntary resignation can be considered a dismissal. Although we disagree with the reasoning of the trial court, we concur with the trial court's decision to grant the defendant's motion for summary judgment on different grounds.[3]

In count one of the complaint, the plaintiff alleged a breach of contract and not a constructive discharge. In her complaint, the plaintiff made numerous allegations with regard to the defendants' conduct and alleged that the "board, Rifenburg, and Vacca's conduct . . . constituted a *breach of contract,* in that . . . *defendant*

---

[3] "This court may . . . affirm a trial court's decision even though it is based on other grounds if the same result is required by law." *Sylvestre* v. *United Services Automobile Assn. Casualty Ins. Co.*, 42 Conn. App. 219, 224, 678 A.2d 1005 (1996), aff'd, 240 Conn. 544, 692 A.2d 1254 (1997).

*effectively terminated plaintiff by suspending her for an indefinite period . . . .*" (Emphasis added.) Therefore, it is a breach of contract claim based on the plaintiff's suspension with pay, and not a wrongful constructive discharge claim that the plaintiff is alleging in her complaint. It appears, therefore, that the plaintiff is attempting to interject the tort claim of wrongful constructive discharge into her complaint by either adding it as an additional claim or by now alleging that the contract was breached by the tortious acts of the defendants.

Insofar as the plaintiff is attempting to allege an additional tort claim for wrongful discharge, even if an additional claim could be raised,[4] we note that a tenured teacher cannot pursue a separate tort claim for wrongful discharge. See *Tomlinson* v. *Board of Education,* 226 Conn. 704, 729–30, 629 A.2d 333 (1993). " '[T]he right to recover in tort for wrongful discharge extends only to employees at will.' . . . Because the plaintiff is a tenured teacher . . . she is not an employee at will." (Citation omitted.) Id., 730 n.18.

Insofar as the plaintiff is attempting to allege that the breach of contract was due to her tortious constructive discharge by the defendants, we note that that claim was not alleged in the complaint. The plaintiff stated in her affidavit in support of her objection to the defendants' motion for summary judgment that she "was

---

[4] "A fundamental tenet in our law is that the plaintiff's complaint defines the dimensions of the issues to be litigated. [T]he right of a plaintiff to recover is limited to the allegations of [her] complaint. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . A plaintiff may not allege one cause of action and recover upon another. Facts found but not averred cannot be made the basis for a recovery. . . . A judgment in the absence of written pleadings defining the issues would not merely be erroneous, it would be void." (Citations omitted; internal quotation marks omitted.) *Pergament* v. *Green,* 32 Conn. App. 644, 650, 630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993).

constructively discharged, in violation of public policy from [her] position by the defendants, who rendered [her] working conditions so difficult and intolerable, as hereinafter set forth, that [she] was compelled to resign." However, "[a]ffidavits are not pleadings . . . and a plaintiff cannot, under the guise of fortifying the complaint, present an entirely new cause of action or expand the scope of his cause of action by means of [an affidavit]. . . . The issue must be one which the party opposing the motion is entitled to litigate under his pleadings and the mere existence of a factual dispute apart from the pleadings is not enough to preclude summary judgment." (Internal quotation marks omitted.) *Beebe* v. *East Haddam*, 48 Conn. App. 60, 70, 708 A.2d 231 (1998).

Because we concluded that the trial court had jurisdiction, properly determined that the plaintiff's resignation was voluntary and there was no constructive discharge pleaded, there is no genuine issue of material fact with regard to whether the plaintiff was terminated without cause, and the defendant board was entitled to judgment as a matter of law on count one.

## II

The plaintiff next claims that the trial court improperly concluded, as a matter of law, that she cannot maintain a cause of action for intentional infliction of emotional distress because the plaintiff was represented by counsel and because she voluntarily resigned from her position. The defendants respond that under *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 681, 513 A.2d 66 (1986), and *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 88, 700 A.2d 655 (1997), a claim for intentional infliction of emotional distress in the employment context must be based on conduct relating to termination or the termination process. The defendants further argue that, because the plaintiff was not

terminated, she was not entitled to recover for intentional infliction of emotional distress.

The defendants' argument is not supported by the cases cited. In *Morris*, our Supreme Court upheld the trial court's order to strike a wrongful discharge claim because the plaintiff failed to allege an important violation of public policy. The Supreme Court, however, did not agree with the trial court's conclusion that because the plaintiff failed to state a claim for wrongful discharge, the plaintiff could not claim unintentional infliction of emotional distress. The *Morris* court held that "[t]here is nothing . . . to preclude an action for unintentional infliction of emotional distress based upon unreasonable conduct of the defendant in the termination process." *Morris* v. *Hartford Courant Co.*, supra, 200 Conn. 681–82.

In *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 88–89, our Supreme Court held that "[t]he mere termination of employment, even where it is wrongful, is . . . not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Contrary to the defendant's contention, *Morris* and *Parsons* simply state that, in emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim.

In this case, the plaintiff does not allege that the emotional distress claim arose from a termination. She alleges that the emotional distress claim arose from conduct separate and distinct from the alleged termination. The plaintiff alleges specific conduct by the defendants beginning in September, 1996, and ending at the time she signed the resignation. Because the claim for emotional distress was based on actions prior to the alleged termination, the fact that the conduct may have resulted in a resignation rather than a termination does not preclude the plaintiff from bringing an intentional

infliction of emotional distress claim against the defendants.

We conclude, therefore, that the trial court improperly granted the defendants' motion for summary judgment when it concluded that "[w]hile this issue is normally a question of fact for the jury, the facts in this case are undisputed; [the] plaintiff voluntarily resigned her job and at such time was fully represented by counsel. The plaintiff has not, therefore, suffered a loss of her employment and thus cannot make a claim for intentional infliction of emotional distress. See *Morris* v. *Hartford Courant Co.*, [supra, 200 Conn. 681]."

"In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

The plaintiff did not allege that a termination was the basis of her intentional infliction of emotional distress claim; the plaintiff alleges that the defendant subjected her to a humiliating series of incidents in the classroom and in front of coworkers. The plaintiff alleges that in September, 1995, following an incident in which the plaintiff allowed one of her students to return home instead of going to an after school program, Rifenburg told her that she was acting strangely and that she needed to take time off. In addition, the plaintiff alleges that Rifenburg told her that she was "collecting information on her" and conducted meetings outside her presence. She further alleges that on September 18, 1995,

Rifenburg called the police to have her escorted out of the school. The plaintiff alleged that the defendants required her to undergo two psychiatric examinations. She further alleged that the defendants required her to take a leave of absence even though the psychological evaluations indicated that she could return to work. She alleges that the conduct was outrageous, that the defendants knew or should have known that emotional distress would likely result from their conduct and that it caused her severe emotional distress.

The defendants argued in support of their motion for summary judgment that there was no termination and, even assuming that the defendants' engaged in the conduct alleged, it was not outrageous because at all times the plaintiff was represented by counsel. We conclude that the plaintiff alleged sufficient facts to state a claim for intentional infliction of emotional distress. The defendants, however, have failed to show the absence of a genuine issue of material fact regarding whether their alleged conduct occurred or whether it was outrageous. We conclude that the trial court improperly granted the defendants' motion for summary judgment on count two.

### III

The plaintiff finally claims that the trial court improperly held that, because the defendants Rifenburg and Vacca were employed by the board and were parties to the contract, there can be no tortious interference with the contract between the plaintiff and the board by them, as a matter of law. Specifically, the plaintiff argues that agents can be held liable for such interference or inducement if they did not act legitimately within the scope of their duties, but, instead, used their authority and power improperly for personal motives or gain.

"[Our Supreme Court] has long recognized a cause of action for tortious interference with contract rights . . . . The essential elements of such a claim include, of course, the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss. . . . [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously." (Citations omitted; internal quotation marks omitted.) *Solomon* v. *Aberman*, 196 Conn. 359, 364–65, 493 A.2d 193 (1985).

The trial court held that the defendants' motion for summary judgment should be granted because there can be no intentional interference with contractual relations by someone who is directly or indirectly a party to the contract. "[T]he general rule is that the agent may not be charged with having interfered with a contract of the agent's principal." *Selby* v. *Pelletier*, 1 Conn. App. 320, 327 n.4, 472 A.2d 1285 (1984). "[A]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract . . . [the agent, however,] could be held liable for such interference or inducement if he did not act legitimately within his scope of duty but used the corporate power improperly for personal gain." (Citations omitted; internal quotation marks omitted.) *Wellington Systems, Inc.* v. *Redding Group, Inc.*, supra, 49 Conn. App. 168.

In her complaint, the plaintiff alleged that Rifenburg and Vacca interfered with the contractual and beneficial

relationship between her and her employer, the board. She alleged that their conduct was part of a campaign to discredit her and to cause the plaintiff to be suspended or discharged from her employment. She alleged that they were discrediting her to deflect public scrutiny from themselves regarding subjects of wrongdoing and misconduct and that they acted out of malice, hatred, or ill will toward her. In effect, the plaintiff alleged that the defendants acted outside the scope of their authority in their actions. We conclude that the plaintiff alleged sufficient evidence to state a claim for tortious interference with a contract. The defendants relied solely on their argument that, as agents of the board, they cannot be held liable for tortious interference with a contractual relationship in their motion for summary judgment. The defendants, therefore, failed to carry their burden to show the absence of a genuine issue of material fact with regard to whether the defendants acted outside the scope of their authority.

Because agents can be liable for tortious interference with a contractual relationship when they act outside the scope of their authority, we conclude that the trial court improperly concluded that "there can be no tortious interference of a contract by someone who is directly, or indirectly, a party to the contract." Because we conclude that the defendants failed to carry their burden with regard to summary judgment, we hold that the trial court improperly granted summary judgment with regard to the count three tortious interference with a contractual relationship claim.

The judgment is reversed as to counts two and three only and the case is remanded for further proceedings on those counts.

In this opinion the other judges concurred.