[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff alleges four separate counts in his revised complaint. Under the terms of a 1989 divorce judgment (judgment) with his first wife, and a 1998 separation agreement (agreement) with his second wife, the plaintiff was granted joint custody of his minor children. He was "required to undergo visitation of the children every other weekend from Saturday 4:00 p. m. until Sunday at 6:00 p. m." The plaintiff became employed in April, 1997, with a restaurant in Danbury owned by the defendant, Friendly's Ice Cream Corporation, and was promoted to the general manager of the Restaurant in August, 1997. The plaintiff advised the defendant of the requirements of the judgment and the agreement and his schedule was determined and adjusted accordingly.
On October 31, 1998, the plaintiff left the defendant's restaurant at 4:00 p. m., the end of his shift. The assistant manager was scheduled to oversee the restaurant after 4:00 p. m. until the restaurant closed at 9:30 p. m. On November 8, 1998, the defendant's immediate superior demanded that the plaintiff justify the 4:00 p. m. departure. Libardi was shown a copy of the agreement by the plaintiff and stated that he would be violating the agreement by failing to leave for his visitation with his minor child. Libardi thereupon terminated his employment.
The aforesaid four counts set forth in the complaint sounded in wrongful discharge (first count), wrongful withholding of wages (second count), intentional infliction of emotional distress (third count), and negligent infliction of emotional distress (fourth count). The defendant has filed a motion to CT Page 15759 strike all four counts.
"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39; seePeter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270
(1998). "The proper method to challenge the legal sufficiency of a complaint is to make a motion to strike prior to trial."Gulack v. Gulack, 30 Conn. App. 305, 309 (1993).
"The role of the trial court [is] to examine the [complaint], construed in favor of the plaintiffs, to determine whether the [pleading party has] stated a legally sufficient cause of action." (Internal quotation marks omitted.) Dodd v. MiddlesexMutual Assurance Co., 242 Conn. 375, 378 (1997). "A motion to strike admits all facts well pleaded." Parsons v. UnitedTechnologies Corporation, 243 Conn. 66, 68 (1997). "Practice Book . . . § 10-39 . . . allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." If facts provable in the complaint would support a cause of action, the motion to strike must be denied. Pamela B. v. Meat,244 Conn. 296, 325 (1998). However, the motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted.) Mingachos v. CBS,Inc., 196 Conn. 91, 108 (1985). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 215 (1992).
The plaintiff claims in the first count that he was wrongfully discharged for "complying with the Agreement and fulfilling his obligations to his child." He argues that the "discharge was done in violation of the public policy of the State of Connecticut as set forth in Chapter 815j of the General Statutes [,] particularly Connecticut General Statutes § 46b-56
and 46b-87."
Chapter 815j of General Statutes provides for dissolution of marriage, legal separation and annulment. In particular, § 46b-56
provides, in relevant part:
"(a) In any controversy before the Superior Court as to the CT Page 15760 custody or care of minor children . . . the court may at any time make or modify any proper order regarding the education and support of the children and of care, custody and visitation. . . . [T]he court may assign the custody of any child to the parents jointly, to either parent or to a third party . . .
"(b) In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child . . . and (2) consider whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b."
Section 46b-87 provides, inter alia:
"When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive,46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation. The costs of commitment of any person imprisoned for contempt of court by reason of failure to comply with such an order shall be paid by the state as in criminal cases."
The plaintiff is presumed to be an employee at will, The complaint does not allege otherwise, and it is implied in the plaintiff's memorandum in opposition that he was an employee at will with the defendant.[1] The traditional rule in Connecticut governing employment at will contracts of permanent employment, or employment for an indefinite term, is that such contracts are terminable at the will of either party without regard to cause. See Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc.,234 Conn. 1, 14 (1995).
The doctrine of wrongful discharge is a narrow exception to this rule. See Parsons v. United Technologies Corporation.,243 Conn. 66, 79 (1997); Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471 (1980). The narrow exception applies where "the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." (Emphasis in original.) SheetsTeddy's Frosted Foods, Inc., supra, 475; accord Daley v. AetnaLife Casualty Co., 249 Conn. 766, 798 (1999). Thus, courts have "recognized a public policy limitation on the traditional employment at-will doctrine in an effort to balance the competing CT Page 15761 interests of employers and employees." Courts are mindful of the "inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception." Therefore, courts should not "lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. . . . Absent unusual circumstances, [courts] will interfere with a personnel decision only if it implicates an explicit statutory or constitutional provision, or judicially conceived notion of public policy." (Citations omitted; internal quotation marks omitted.) Daley v. Aetna Life Casualty Co., 249 Conn. 766, 798,802-03.
The Daley case is illustrative. "At trial, by reference to a constitutional provision and several state statutes, [the plaintiff there] sought to establish that her discharge contravened two important public policies with respect to employer personnel decisions. First, she assert[ed] that Connecticut recognizes an important public policy not to discriminate against workers who choose to have and raise children, and that this important policy requires that employers establish family-friendly scheduling options." Daley v. AetnaLife Casualty Co., supra, 798-99. Second, she further asserted that "Connecticut recognizes an important public policy to encourage employment opportunities for women, and that the defendants contravened that policy by discharging her for having sought a flexible work schedule."
The court found no merit in either argument. With regard to the first, the court held that none of the statutes cited by the plaintiff, relevant provisions from the state and federal family and medical leave acts and General Statutes, requires that an employer accommodate employee requests for flexible work schedules. With regard to the plaintiff's second argument, the court held that none of the statutes expressly obligates an employer to accommodate an employee's work-at-home requests, or to refrain from taking adverse action against an employee who persists in her efforts to secure such an arrangement. In the absence of explicit constitutional or statutory prohibition, the court declined to recognize an "important public policy" to that effect. Daley v. Aetna Life Casualty Co., supra, 802, 804.
This court is satisfied that the Daley holding directly controls the disposition of the case at bar. The plaintiff, however, was similarly discharged for having sought a flexible CT Page 15762 work schedule to accommodate his child-visitation schedule. The plaintiff's argument here is even weaker in that, unlike the statutes cited in Daley, the two statutes relied on for support by the plaintiff here; §§ 46b-56 and 46b-87; do not even place any affirmative duty on an employer with regard to its employees. Those statutes in question do not deal in any way with the employer-employee relationship.
It is equally groundless for the plaintiff to claim that "failure to comply with visitation orders may result in a finding of contempt."[2] Tufano v. Tufano, 18 Conn. App. 119 (1989). Section 46b-56 is not one of the statutory grounds enumerated in § 46b-87 for a possible contempt of court sanction.[3] The Tufano case also concerns an entirely different issue. In Tufano, the Appellate Court affirmed the trial court's judgment finding her in contempt for willfully violating the rights of visitation that had been awarded to the defendant's parents. The grandparents of the child had filed ten motions for contempt against the plaintiff for her repeated denial of their visitation rights before the court held her in contempt.
None of the cases relied on by the plaintiff are apposite. They either advance some general principles about the best interest or welfare of the child in custody or alimony cases, or address an employer's violation of express constitutional or statutory provisions, such as discharging an employee for attending to jury duties or for requesting medical or child care leave of absence.[4]
If the plaintiff's visitation schedule conflicted with his employment duties, he could have sought to have the visitation schedule modified, either in agreement with his former spouses or by petitioning the court. There is no evidence that the plaintiff had ever made such an effort.
The Daley court cautioned against imputing a statement of public policy beyond that which is represented. Otherwise, it would subject the employer who maintains compliance with express statutory obligations to unwarranted litigation for failure to comply with a heretofore unrecognized public policy mandate. As rightly argued by the defendant, it would be a draconian result for the court to alter an employer's ability to dictate the hours of work for its employees.[5] Because §§ 46b-56 and 46b-87
impose no legal duty whatsoever on an employer, the defendant cannot be found to have violated a duty or any public policy CT Page 15763 behind the statutes when it discharged the plaintiff. Therefore, the court is constrained to grant the motion to strike the first count.
The plaintiff alleges that the defendant failed or refused to pay him vacation pay accrued while employed. He argues that such failure violates §§ 31-71b, 31-71c,31-71i and 31-76k of the General Statutes. Since the plaintiff admits that the vacation pay in dispute was "an accrued fringe benefit" within the meaning of §31-76k, rather than part of the regular wages, §§31-71b (weekly payment of wages);31-71c (payment of wages on termination of employment); and 31-71i
(waiver of weekly payment requirement), are inapposite.
Section 31-76k provides:
"If an employer policy or collective bargaining agreement provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits exclusive of normal pension benefits in the form of wages in accordance with such agreement or policy. . . ." SeeFulco v. Norwich Roman Catholic Diocesan Corp. ,27 Conn. App. 800, 806 (1992), appeal dismissed, 226 Conn. 404 (1993).
The statutory language is clear that the plaintiff must allege the existence of an employer policy or collective bargaining agreement to establish a cause of action under §31-76k. See Fulco v. Norwich Roman Catholic Diocesan Corp. , supra, 807 (affirming trial court's striking of § 31-76k claim because it "contains no allegation that the defendant engaged in any general plan or practice with regard to paid vacation days"). The court in Fulco continued that because the complaint fails to allege the existence of an employer policy, the plaintiff has failed to state a cause of action under § 31-76k. "[T]he term `employer policy' relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." (Internal quotation marks omitted.) Fennell v. City of Hartford,238 Conn. 809, 821 (1996). CT Page 15764
Ferryman v. Groton, 212 Conn. 138, 146 (1989), does not support the plaintiff's argument that it is not necessary for him to plead the existence of an employer policy or collective bargaining agreement for his § 31-76k claim. The court inFerryman found that the complaint discloses the essentials of either a co-owner relationship, a bailor-bailee relationship or a lessor-lessee relationship, any one of which could contain the express or implied independent, legal duty. The court therefore concluded that what is necessarily implied need not be expressly alleged. The other two cases relied on for support by the plaintiff are also inapposite.[6]
The complaint at bar does not allege the existence of an employer policy or collective bargaining agreement. Nor does it disclose any facts that imply their existence because the plaintiff's claim alleges mere conclusions of law that are unsupported by the facts alleged. The court finds that the second count under the controlling authority of Fulco and Fennell does not survive the motion to strike. See Novametrix Medical Systems,Inc. v. BOC Group, Inc., supra.
The plaintiff alleges that the defendant, by discharging him, acted intentionally, recklessly and maliciously to cause, and did cause him emotional distress. To establish a cause of action for intentional infliction of emotional distress, "[i]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Petyan v. Ellis, 200 Conn. 243, 253 (1986).
"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) DeLaurentis v. New Haven,220 Conn. 225, 267 (1991). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!'" (Internal quotation marks omitted.)Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20, quoting 1 Restatement (Second), Torts § 46, comment (d). CT Page 15765
"[T]here is no bright line rule to determine what constitutes extreme and outrageous conduct sufficient to maintain an action. The court looks to specific facts and circumstances of each case in making its decision." Martin v. Bridgeport Hospital, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 356084 (February 11, 1999, Melville, J.). "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements [i.e., extreme or outrageous conduct and severe emotional distress] is a question, in the first instance, for the court. Only where reasonable minds can differ does it become an issue for the jury." Mellaly v.Eastman Kodak Co., supra, 18.
"The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Internal quotation marks omitted.) Parsons v. UnitedTechnologies Corp. , supra, 89 (discussing a negligent infliction of emotional distress claim); see also Appleton v. Board ofEducation, 53 Conn. App. 252, 264 (1999) (determining the causes of intentional and negligent infliction of emotional distress under the same rule that "in emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim"). "Those cases in the employment context that have granted motions to strike because the allegations do not sufficiently describe "extreme and outrageous' behavior are more often those that allege little more than that the plaintiff was terminated without just cause." Centiv. Lexington Health Care Center, Superior Court, judicial district of New Haven at New Haven, Docket No. 383535 (May 1, 1997, Licari, J.).
The assertion that the defendant's decision to discharge him was "extreme and outrageous" because the decision itself was unreasonable and against public policy. This is nothing but a conclusory statement with the factual predicate to support it. Mere conclusions of law without factual support therefor must also fail under a motion to strike. See Novametrix MedicalSystems, Inc. v. BOC Group. Inc., supra.
As a matter of law, a discharge decision by itself, without more, cannot give rise to a cause of action for intentional infliction of emotional distress. It has been held that "in emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim." Appleton v. Board of Education, CT Page 15766 supra, 264 (extending the Supreme Court's holding in Morris and Parsons on negligent infliction of emotional distress to intentional infliction of emotional distress); see Parsons v.United Technologies Corp. , supra, 88; Morris v. Hartford CourantCo., 200 Conn. 676, 681 (1986). The plaintiff's failure to allege "conduct separate and distinct from the alleged termination" provides an additional ground for the court to grant the motion to strike the third count. See Appleton v. Board of Education, supra, 264-66 (reversing trial court's decision to grant summary judgment because the plaintiff had alleged a "humiliating series of incidents in the classroom and in front of coworkers" that were "separate and distinct from the alleged termination").
The plaintiff argues that the defendant's conduct of discharging him "involved an unreasonable risk of causing emotional distress," which gives rise to a cause of action for negligent infliction of emotional distress. Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior.Parsons v. United Technologies Corporation, supra, 88-89.
Under the Parsons bright-line rule, the plaintiff's mere assertion that his discharge was unreasonable must fail because the plaintiff does not allege any facts, distinct and separate from the termination itself, to show that the defendant acted unreasonably. See Appleton v. Board of Education, supra.
The motion to strike the fourth count is, accordingly, granted.
Moraghan, J.