[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Ronald Baricko, filed an amended seven-count complaint on December 8, 1997, against the defendants, Chesebrough Ponds, Alex Znaiden, Alan Suares, Tom Roberts and James McCall. In the first five CT Page 15653 counts of the amended complaint, the plaintiff alleges intentional infliction of emotional distress against each of the defendants. In counts six and seven of the amended complaint, the plaintiff alleges promissory estoppel against McCall and Chesebrough Ponds, respectively.
On October 18, 1999, Chesebrough Ponds filed a motion for summary judgment[1] as to counts one through five alleging intentional infliction of emotional distress, and counts six and seven alleging promissory estoppel.[2] Chesebrough Ponds moves for summary judgment on the ground that, based on the indisputable material facts, it is entitled to judgment is this case.
On December 16, 1999, the plaintiff moved to strike certain exhibits attached to the defendants' memorandum of law.[3] In response to the plaintiff's motion to strike, on February 15, 2000, the defendants filed a substituted memorandum of law in support of the motion for summary judgment.[4] On April 6, 2000, the plaintiff filed a memorandum of law in opposition to the motion.[5] On August 25, the defendants filed a reply memorandum in support of the motion for summary judgment. The plaintiff subsequently filed a memorandum addressed to the defendants' reply memorandum.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Honan v. Greene, 37 Conn. App. 137, 140, 655 A.2d 274 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Miles v. Foley, 253 Conn. 381, 386, 752 A.2d 503
(2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citation omitted; internal quotation marks omitted.)Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000). "The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence." (Internal quotation marks omitted.) Pion v. Southern New England Telephone Co., 44 Conn. App. 657,663, 691 A.2d 1107 (1997).
 Count One — Intentional Infliction of Emotional Distress (Znaiden)
CT Page 15654
In count one of the amended complaint, the plaintiff alleges intentional infliction of emotional distress against Znaiden. The defendants argue that they are entitled to summary judgment on this count because Znaiden's alleged conduct was not, as a matter of law, extreme and outrageous.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." (Citations omitted; internal quotation marks omitted.) Appleton v. Boardof Education, supra, 254 Conn. 210.
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Id., 210-11. "[I]n emotional distress claims arising from a termination, the plaintiff must allege some conduct other than the termination itself to support the claim." Appleton v. Board ofEducation, 53 Conn. App. 252, 264, 730 A.2d 88, rev'd on other grounds,254 Conn. 205, 757 A.2d 1059 (2000).
In count one of the amended complaint, the plaintiff alleges: (1) that Znaiden used a management style based on fear and stress between superior and subordinates, and among subordinates, in order to create a hostile workplace for his employees; (2) Znaiden was motivated by personal ambition to improve performance records under his supervision, which he believed he could do by eliminating the plaintiff as an employee; (3) Znaiden, knew and observed that this treatment impaired and adversely affected the plaintiff's mental health as well as his physical CT Page 15655 well-being, and this result merely encouraged Znaiden to deliberately create and increase debilitating emotional pressure on the plaintiff in the workplace, in an effort to separate him from his job; (4) Znaiden used one of his subordinate employees, Suares, as an informer to provide frequent, oral reports about the plaintiff, precluding the plaintiff from having accurate knowledge of what was reported, and preventing the plaintiff from defending himself; and (5) when the plaintiff approached Znaiden, to advise him of his problem with work stress and to discuss the negative work reviews, Znaiden responded by telling the plaintiff to "either quit his job or go on sick leave." (Amended complaint, count one, ¶¶ 4-11).
In his deposition, the plaintiff further alleges: that Znaiden had a hostile attitude; Znaiden refused to allow employees to use vacation or sick time when projects were due; Znaiden would force the plaintiff to work overtime without any notice; Znaiden would not allow the plaintiff to take proper lunches; and Znaiden would play employees against one another "to get dirt on the other people so he could manipulate them." [Plaintiff's deposition, pp. 325-326; 339-340].
The plaintiff fails to allege facts or provide proof that Znaiden's actions were "atrocious, and utterly intolerable in a civilized society." (Internal quotation marks omitted.) Appleton v. Board of Education, supra, 254 Conn. 211.[6] Rather, the plaintiff alleges that Znaiden created a hostile work environment, discriminated against him, disciplined him and harassed him.[7] Clearly, such allegations fall short of misconduct that exceeds "all bounds usually tolerated by decent society. . . ." (Internal quotation marks omitted.) Id., 210. The plaintiff fails to submit proof that there are genuine issues of material fact as to whether Znaiden's behavior was extreme and outrageous. The defendants' motion for summary judgment on count one of the plaintiff's amended complaint is granted because the defendants have shown that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law on count one.
 Count Two — Intentional Infliction of Emotional Distress (Cheesbrough Ponds)
In count two of the amended complaint, the plaintiff alleges intentional infliction of emotional distress against Chesebrough Ponds based on the doctrine of respondeat superior for Znaiden's alleged conduct. The defendants argue that they entitled to summary judgment on this count because Znaiden's underlying conduct was not, as a matter of law, extreme and outrageous.
"Under the doctrine of respondeat superior, [a] master is liable for CT Page 15656 the wilful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business. . . . A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase during the period covered by his employment. . . . While a servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . that does not end the inquiry. Rather, the vital inquiry in this type of case is whether the servant on the occasion in question was engaged in a disobedient or unfaithful conducting of the master's business, or was engaged in an abandonment of the master's business. . . . Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." (Internal quotation marks omitted.) Mullen v. Horton, 46 Conn. App. 759, 764, 700 A.2d 1377
(1997).
The defendants' motion for summary judgment on count two of the plaintiff's amended complaint is granted because the plaintiff fails to allege facts or provide proof that Znaiden's conduct was extreme and outrageous. Thus, Chesebrough Ponds cannot be vicariously liable for Znaiden's conduct.
 Count Three — Intentional Infliction of Emotional Distress (Suares)
In count three of the amended complaint, the plaintiff alleges intentional infliction of emotional distress against Suares. The plaintiff alleges that "[b]ecause of the assistance rendered to Alex Znaiden as described in this count [which incorporates paragraphs 1-13 of the first count], Alan Suares contributed to; participated in and helped to create the conditions described in this count, as a result of which the plaintiff was emotionally injured and impaired, and was disabled from continuing with his work. . . ." (Amended complaint, count three, ¶ 14). In his deposition, the plaintiff further alleges: that Suares was cold and callous toward the plaintiff after his father's death; Suares did not invite him out to lunch with a vendor; Snares informed on the plaintiff to Znaiden; Suares did not acknowledge his birthday; and Suares did not answer his questions." [Plaintiff's deposition, pp. 116-119]. The defendants argue that they are entitled to summary judgment on this count because Suares' conduct was not, as a matter of law, extreme and outrageous.
The plaintiff fails to allege facts or provide evidence that Suares' actions were "atrocious, and utterly intolerable in a civilized society." (Internal quotation marks omitted.) Appleton v. Board of Education, supra, 254 Conn. 211.[8] Furthermore, the proof submitted by the defendants shows that there are no genuine issues of material fact as to whether Suares' conduct was extreme and outrageous. The defendants' CT Page 15657 motion for summary judgment on count three of the plaintiff's amended complaint is granted.
 Count Four — Intentional Infliction of Emotional Distress (Roberts)
In count four of the amended complaint, the plaintiff alleges intentional infliction of emotional distress against Roberts, the Director of Human Resources. The plaintiff alleges that when he approached Roberts upon receipt of his termination notice and asked Roberts to set aside his termination pending the receipt of his psychological testing report which was due the next day, Roberts told him, "it was too late to close the barn door after the horse was stolen" and the plaintiff alleges that this statement "was deliberately intended to injure the plaintiff psychologically and emotionally so that he would leave his employment." (Amended complaint, count four, ¶ 14). Furthermore, in his deposition, the plaintiff alleges that Roberts was responsible for "trumped-up sexual harassment" allegations made against him. [Plaintiff's deposition, p. 345]. The plaintiff alleges the sexual harassment allegations, allegedly made by fellow employees, were actually fabricated by Roberts in order to cause the plaintiff further distress. [Plaintiff's deposition, pp. 346-347]. The defendants argue that they are entitled to summary judgment on this count because Roberts' alleged conduct was not, as a matter of law, extreme and outrageous.
The plaintiff fails to allege facts or provide evidence that Robert's conduct, in refusing to set aside the plaintiff's termination, exceeds "all bounds usually tolerated by decent society . . . ." (Internal quotation-marks omitted.) Appleton v. Board of Education, supra,254 Conn. 210. The defendants' motion for summary judgment on count four of the amended complaint is denied because the plaintiff has alleged facts in the evidence provided to the court that raise a genuine issue of material fact. Specifically, the plaintiff's proof raises the genuine issue of whether false sexual harassment allegations made by a workplace supervisor for the purpose of discrediting an employee rises to the level of extreme and outrageous conduct. Accordingly, the defendants' motion as to count four of the amended complaint is denied.
 Count Five — Intentional Infliction of Emotional Distress (Cheesebrough Ponds)
In count five of the amended complaint, the plaintiff alleges intentional infliction of emotional distress against Chesebrough Ponds based on the doctrine of respondeat superior for Robert's alleged conduct concerning the pending receipt of the plaintiff's psychological testing report. The defendants argue that they are entitled to summary judgment on this count because Robert's underlying conduct was not, as a matter of CT Page 15658 law, extreme and outrageous.
The plaintiff fails to provide proof that Roberts' refusal to await the receipt of the plaintiff's psychological testing fails to rise to the level of extreme and outrageous conduct. Thus, the defendants' motion for summary judgment on count five of the amended complaint is granted because the plaintiff fails to allege facts or provide evidence that Robert's conduct exceeds "all bounds usually tolerated by decent society. . . ." Id., 210. Furthermore, the proof submitted by the defendants' shows that there are no genuine issues of material fact as to whether Chesebrough Ponds is vicariously liable for Robert's conduct, which the plaintiff fails to prove was extreme and outrageous.
 Count Six — Promissory Estoppel (McCall)
In count six of the amended complaint, the plaintiff alleges promissory estoppel against McCall. The defendants argue they are entitled to summary judgment on this count because the plaintiff could not, and did not, reasonably rely to his detriment on any clear and definite promise made by McCall.
"Section 90 of the Restatement Second states that under the doctrine of promissory estoppel [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. . . . Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge." (Citations omitted; internal quotation marks omitted.) Wellington Systems, Inc. v. ReddingGroup, Inc., 49 Conn. App. 152, 162-63, 714 A.2d 21, cert. denied,247 Conn. 905, 720 A.2d 516 (1998).
In count six of the amended complaint, the plaintiff alleges that McCall called him by telephone, "and told the plaintiff his discharge had CT Page 15659 been rescinded; that plaintiff should use as much time as he needed to improve his health; and when plaintiff had reached the point where he could return to work, the defendant corporation [Chesebrough Ponds] would provide him with a comparable job in a different division." (Amended complaint, count six, ¶ 18). The plaintiff alleges that he was not able to return to work again until after sixteen weeks from the time he had left work, and that after the expiration of this sixteen weeks period, Chesebrough Ponds refused to reinstate him and would not honor McCall's promise. In his deposition, the plaintiff admits, however, that shortly after this alleged conversation with McCall, he received a letter in the mail from Chesebrough Ponds that explicitly stated that Chesebrough Ponds would only hold his job open for a sixteen-week period.[9]
Even if the court were to find that McCall's alleged representation was sufficiently promissory and sufficiently definite to support contractual liability, the plaintiff cannot recover on a theory of promissory estoppel since any reliance by the plaintiff on McCall's alleged oral promise was unreasonable in light of the letter, which explicitly stated that Chesebrough Ponds had no obligation to hold open the plaintiff's job after the expiration of the sixteen-week period. See Yost v. Ex-CelloCorp., 18 Conn. L. Trib. 2, 27 (January 13, 1992, Cabranes, J.) (the court granted summary judgment on a count of promissory estoppel where "any reliance by plaintiff on his supervisor's alleged oral statement that he would be covered by the employee handbook was unreasonable since the handbook stated explicitly that it was applicable to hourly workers only"). The defendants' motion for summary judgment on count six of the amended complaint is granted because the plaintiff fails to counter the defendants' proof that no genuine issue of material fact exists regarding whether the plaintiff could reasonably rely on McCall's oral promise. Accordingly, the defendants' motion for summary judgment as to count six of the amended complaint is granted.
 Count Seven — Promissory Estoppel (Cheesebrough Ponds)
In count seven of the amended complaint, the plaintiff alleges promissory estoppel against Chesebrough Ponds. The plaintiff alleges that he "relied on the defendant corporation's [Chesebrough Ponds] promise, duly authorized and made on its behalf by its employee James McCall, that the defendant corporation would accept the plaintiff back to work with reasonable accommodations when he was sufficiently recovered to continue work. . . ." (Amended complaint, count seven, ¶ 19). The defendants argue that they are entitled to summary judgment on this count because the plaintiff did not rely to his detriment on any clear and definite promise made by McCall or Chesebrough Ponds. CT Page 15660
The defendants' motion for summary judgment on count seven of the amended complaint is granted because any reliance by the plaintiff on McCall's alleged oral promise, made on Chesebrough Ponds behalf, was unreasonable in light of the letter the plaintiff received from Chesebrough Ponds.
For the foregoing reasons, the court grants the defendants' motion for summary judgment on counts one, two, three, five, six and seven of the plaintiff's amended complaint. The defendants' motion for summary judgment on count four of the plaintiff's amended complaint is denied.
Howard F. Zoarski Judge Trial Referee